IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RUSSELL L. EBERSOLE,
d/b/a ABERDEEN ACRES PET
CARE CENTER

    Plaintiff,

v.                                                          CIVIL ACTION NO. 1: 12cv26

BRIDGET KLINE-PERRY, ET AL,

    Defendants.

_____ /

## MEMORANDUM IN SUPPORT OF DEFENDANT'S RULE 59 MOTION

Comes now the defendant, Bridget Kline-Perry, by counsel, pursuant to Fed. R. Civ. P. 59, and in support of her Rule 59 Motion states the following:

### I. Constitutional challenge to the punitive damages award:

Excessive punitive damages awards violate a party's right to due process of law under to the 14th Amendment of the United States Constitution. "The Due Process Clause of the 14th Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." State Farm v. Campbell, 538 U.S. 408, 416 (2003). In determining whether a punitive damages award violates the constitutional right, the Court is to be guided by three guideposts: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded

by the jury and the civil penalties authorized or imposed in comparable cases." Id. at 418.

### 1. Evaluation of the punitive damages award under the first guidepost:

The most important guidepost is the first guidepost, and it is to be evaluated in light of "whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." Id. at 419. "It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." Id. "A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." Id.

In this defamation claim, the defendant's conduct did not involve any physical harm, or any reckless disregard for the health or safety of others. The defamatory statements submitted to the jury for its judgment were limited to an four day period (see, Jury Instruction B), and were not repeated over an extended period of time. Numerous other statements and acts "independent from the acts

upon which liability was premised" were admitted into evidence as part of the plaintiff's evidence as to conspiracy. However, the jury was instructed that they could award punitive damages only for the defamation claim (see, Jury Instruction I), and the defamatory statements were limited to five communications over a four day period. The case presents a substantial likelihood that the jury violated the constitutional prohibition by considering the defendant's other acts "independent from the acts upon which liability was premised" (State Farm, 538 U.S. at 419) as a basis for the punitive damages award. In addition to the substantial probability that the jury misapplied the instructions in this case, three of the five factors weigh against the award of punitive damages in this case. As the Supreme Court stated in State Farm, "The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award." State Farm, 538 U.S. at 419. Here three of the factors clearly weigh against an award of punitive damages, and although the Court might conclude that an award of punitive damages is appropriate, the consideration of the first guidepost certainly counsels that the punitive award should not be particularly severe.

    2. Evaluation of the punitive award under the second guidepost:

Turning to the second guidepost, the ratio between compensatory damages and punitive damages, the ratio in this case is 8 to 1. The severity of the ratio highlights the probability that the jury acted on the basis of acts other than those for which liability was sought to be imposed, in violation of guidepost

one. The jury was instructed that it could award punitive damages for the defamation claim only. See, Instruction I. The jury awarded $7,500 in compensatory damages on the defamation count, and $60,000 in punitive damages. The Supreme Court has declined to adopt a bright line rule, but has repeatedly counseled that ratios in excess of 4 to 1 "might be close to the line of constitutional impropriety." State Farm, 538 U.S. at 425. The ration in this case is 8 to 1. In this case the plaintiff was awarded substantial compensatory damages, particularly in light of his already tarnished reputation (tarnished both by the admission into evidence of his prior 25 felony convictions for fraud, and the widespread media reports of the criminal investigation into his alleged abuse of animals), the complete lack of any evidence or testimony that the defendant's statements caused him any mental anguish or distress, and the uniformly positive statements by his witnesses that they continue to regard him highly within his profession. Even Ms. Rexrode, the sole witness to testify that she had stopped directing business to the plaintiff, testified that her concern with using the plaintiff's services was her concern about what other people might think about her charity work if she were known to be boarding dogs with someone accused of abusing them. Her testimony suggested that she herself continued to hold him in high regard.

The Supreme Court's analysis in State Farm also highlights the duty of the trial court to avoid a situation where the plaintiff receives a form of double

recovery. In State Farm the plaintiffs recovered for emotional distress, humiliation, and outrage. State Farm, 538 U.S. at 426. The Supreme Court noted its concern that compensatory damages for outrage, humiliation, and emotional distress contain a substantial punitive element, and that it is not appropriate for a defendant to suffer a judgment for compensatory damages including such elements of claimed damages, and then be doubly punished with an award of punitive damages. Id. Jury Instruction H in this case directed the jury to presume "injury to the plaintiff's personal and business reputation, humiliation, and embarrassment", and to award him compensatory damages for those injuries. Like in State Farm, the presence of substantial punitive-type damages in the compensatory damage instruction counsels caution in the court's approval of punitive damages award. Both the actual ratio (8 to 1) of punitive to compensatory damages, as well of the makeup of the compensatory damages at issue raise serious constitutional questions with respect to the propriety of the punitive damages award under the second guidepost.

     3. Evaluation of the punitive award under the third guidepost:

The third guidepost is the comparison of the punitive damages award to other penalties that might be imposed for similar conduct. Like the second guidepost, evaluation of the award in this case in light of the third guidepost raises serious constitutional questions with respect to the size of the punitive damages award. The defamatory statements at issue in this case do not involve

5

civil penalties for the conduct at issue, and the Supreme Court has noted that courts should also look to criminal penalties that might be imposed when evaluating a punitive damages award State Farm, 538 U.S. at 428. In this case there are no criminal penalties for defamation, but Virginia does impose penalties for insulting words (see, Va. Code §18.2-417), which is analogous to defamation. A criminal conviction under Va. Code § 18.2-417 (with its far higher burden of proof and additional procedural protections for the defendant), would be a class 3 misdemeanor.  Under Virginia law a class 3 misdemeanor cannot result in jail or imprisonment, and is only punishable by a maximum fine of $500.  Va. Code § 18.2-11.  Jury instruction B provided the jury with five allegedly defamatory statements upon which they were to base their verdict.  The maximum criminal penalty for the defendant (assuming she were convicted of making all five statements under Va. Code § 18.2-417) would be $2,500.  The punitive award imposed by the jury is 24 times the maximum criminal penalty the defendant would have faced, had she been convicted of a crime for the conduct at issue. Although the case clearly went to the jury on instructions that authorized punitive damages only for defamation, and not for conspiracy, a conviction of conspiracy under Va. Code § 18.2-499 would also be only a class three misdemeanor, and subject to a maximum fine of $500, without any possibility of jail or imprisonment. The shocking disparity between the criminal penalties for a conviction based on the behavior at issue in this case, and the punitive damage award actually

imposed by the jury, strongly suggests that the jury in this case acted based on passion or prejudice, and not in accordance with the law.

    4.  <u>Summary of the analysis of the State Farm guideposts:</u>

The Supreme Court has been clear that there are no bright line rules with respect to the constitutionality of punitive awards.  However, the five factors considered under the first guidepost generally weigh against the imposition of punitive damages.  Although the arguable presence of two of the factors (plaintiff is potentially a financially vulnerable person, although there was no evidence at trial that the defendant was aware of any vulnerability, or motivated by it) may make the award of punitive damages constitutionally permissible, the five factors as a whole certainly do not suggest that this is a particularly egregious case, or that the conduct at issue would justify a particularly outsized award such as the 8 to 1 ratio of punitive to compensatory damages awarded in this case.

Consideration of the second factor strongly suggests that the jury was motivated by passion and prejudice, and that this 8 to 1 punitive damages award lies somewhere beyond the "line of constitutional impropriety" relied upon in <u>State Farm</u>.  The disparity in the ratio of compensatory to punitive damages is multiplied when consideration is taken of the composition of the compensatory damages, largely presumed damages that are in part quasi-punitive themselves.  Finally, when considering the size of the punitive award in relation to the criminal penalties established for violation of comparable criminal statutes under the third

guidepost, the disparity between this jury's punitive award and the available criminal penalties is simply shocking. Assuming that the jury found each and every one of the defendant's five statements in Instruction B to be a violation of the insulting words statute, the defendant would have faced a <u>maximum</u> criminal penalty of a $2,500 fine. The actual punitive award is 24 times the maximum <u>criminal</u> penalty that could have been imposed, even assuming conviction of making all five statements under the heightened standard of proof.

The punitive damages award is excessive, and constitutionally deficient because it would violate the defendant's right to due process of law under the 14th Amendment. The award should be set aside, or at a minimum reduced. Defendant respectfully requests that the award be reduced to the $2,500 penalty she could reasonably have expected to face if convicted under Va. Code § 18.2-417.

**II.  Unfair Surprise and Prejudice:**

The defendant was confronted at trial with previously undisclosed videos of the plaintiff training seven different dogs. The defendant has been unfairly prejudiced in her defense of this action because five of the seven videos were never produced prior to trial, and the defense literally saw those videos for the first time at trial as plaintiff played them for the jury. The remaining two videos were produced for the first time on May 21, 2012, as part of the plaintiff's witness and exhibit list. The defendant was deprived of any opportunity to question the

plaintiff about those videos during deposition, or to investigate the circumstances surrounding the taking of the videos, the editing of the videos, or to have her witnesses or expert review or comment on them during her case in chief. The introduction of the videos was particularly prejudicial to the defendant because her defense rested on her assertion that her statements about the plaintiff were substantially true, in that the plaintiff is a person who abuses dogs and should not be entrusted with the care or training of animals, and the admission of the videos, with defendant completely unable to challenge plaintiff's testimony about when and how they were taken, or the number of edits, allowed the jury to conclude that her statements were entirely false, and without any factual basis.

Document requests served on the plaintiff on or about March 27, 2012 requested the plaintiff to produce: "**Complete copies of all customer boarding and/or training files** including, but not limited to, intake forms, pet medical instruction forms, pet medical waivers, contracts, agreements and other documents pertaining to the services provided" (Emphasis added). During the course of trial it became apparent that the plaintiff videotapes each animal that he trains, and maintains a copy of those videotapes. Although defendant clearly requested "all customer boarding and/or training files", no videos were produced by the plaintiff in discovery. Plaintiff did produce some videos as proposed exhibits when his exhibit list was filed on or about May 21, 2012, but only two of those videos were ultimately offered at trial. During the plaintiff's case in chief the

9

Court excluded the offered videos as not being timely produced in discovery.

Following the close of the defense case, in which four witnesses testified to specific acts of abuse by the plaintiff, the plaintiff was permitted, over timely defense objections, to introduce seven videos of what he testified were the dogs identified by the defense witnesses as having been abused. The plaintiff's testimony about the videos was of doubtful reliability, first denying that any of the incidents of abuse described by the defense witnesses had occurred, and simultaneously stating that the seven videos were allegedly taken either on the day of, or the day after the incidents that he denied ever occurred.[1] Defendant was deprived of any ability to challenge, evaluate, or investigate the truth of those statements. Based on plaintiff's counsel's representation to the Court that the videos had never been requested in discovery, the Court admitted the videos as impeachment or rebuttal evidence. In light of the document request quoted above, defendant respectfully requests that the Court reconsider its ruling admitting the videos into evidence, and grant her a new trial, with full opportunity to conduct additional discovery in light of the plaintiff's failure to produce the requested training files.

The discovery rules are not intended to be a game in which opposing

---

[1] Nothing in the electronic files produced to the defendant substantiates plaintiff's testimony with respect to the dates when the videos were taken. It is possible that forensic evaluation by an expert could provide evidence as to when the videos were created, but plaintiff's failure to disclose them in discovery precluded any expert evaluation by experts retained by the defendant.

parties narrowly interpret or deliberately misconstrue discovery requests in order to avoid turning over damaging evidence, or to lay ambushes for opposing parties at trial. The discovery rules are intended to facilitate the free and open exchange of information in the interests of a full and fair trial for both parties on the merits. Parties are entitled to rely on the sworn or certified responses to discovery requests that are propounded. In this case, the plaintiff never having produced video of his training sessions with the dogs at issue in response to the requests, the defendant should not have been confronted with videos with no notice, no opportunity to review them, no opportunity to investigate their provenance, and no opportunity to ask her own witnesses about them. The plaintiff should not be permitted to profit by his failure to produce materials requested in discovery, and the defendant should be awarded a new trial, with the plaintiff to bear his own costs and fees for the result of his failure to produce the videos in discovery.

### III. Lack of Foundation and Speculation:

The plaintiff offered evidence that the defendant's Norsire Farm website had in excess of 5,000 Facebook "likes" at or around the time of the publications. According to plaintiff's evidence, a "like" is recorded whenever a Facebook user clicks the "like" button, and results in a copy of the "liked" page or posting being copied to the Facebook page of the person clicking the "like" button. The plaintiff's theory was that the 5,000 likes demonstrated publication of the statements complained of. The evidence that one of defendant's Facebook

pages had in excess of 5,000 "likes" evidence was offered over the defense objection that there was an inadequate foundation laid to permit the admission of the evidence. Specifically, there was no evidence offered as to when the 5,000 "likes" occurred, or whether any of them occurred during or after the six day period during which the defendant posted the statements complained of. There was never any evidence from which the jury could conclude whether or not the 5,000 "likes" resulted in even one additional person reading the statements complained of. Any conclusion about how many persons viewed the statements based on the number of likes would be pure speculation.

In closing, plaintiff's counsel specifically argued that the jury should award punitive damages based on a formula incorporating the number of "likes." The punitive damages in this case are out of all proportion to any actual damages suffered by the plaintiff, and the reason is due at least in part to the admission into evidence of testimony about the number of "likes" on the defendant's Facebook page, without any testimony as to when they occurred in relation to the posting of the statements at issue. The admission of the evidence invited the jury to speculate about the extent of publication of the statements complained of, and counsel's closing argument explicitly encouraged them to do so. To the extent that the jury adopted counsel's formula, it acted not on the evidence and the law, but on speculation and conjecture. The defendant respectfully requests that the Court set aside the punitive damages award in this matter, or in the alternative,

award her a new trial.

## IV. Conclusion:

The defendant in this case should be awarded a new trial, because the admission of the seven training videos in plaintiff's rebuttal case, without ever having produced them in response to the discovery request for complete copies of all training files unfairly prejudiced the defense. In addition, the admission of evidence of 5,000 "likes" without any foundation evidence to connect the "likes" to actual publication of the statements at issue invited the jury to base its verdict on speculation and conjecture. Plaintiff's counsel's closing argument explicitly encouraging them to do so as a basis for punitive damages compounded the error. Accordingly the defendant moves for a new trial, or in the alternative for the punitive damages award to be set aside. Finally, the award of punitive damages is constitutionally defective in light of the three multi-factor guidepost analysis set forth in State Farm v. Campbell. The award should be reduced to $2,500, which appears to be the maximum criminal penalty the defendant could reasonably have expected to face for her conduct. Accordingly, defendant respectfully requests that the Court vacate the judgment in this matter and award her a new trial, or in the alternative vacate the punitive damages award, or in the alternative reduce the punitive damages award to $2,500.

                                                **BRIDGET KLINE-PERRY**
                                                By Counsel

BANCROFT, McGAVIN,
HORVATH & JUDKINS, P.C.


                    /s
_____
Nicholas J. Lawrence, VSB No. 76964
Steven W. Bancroft, Esquire, VSB No. 18447
3920 University Drive
Fairfax, Virginia 22030
Telephone:   (703) 385-1000
Facsimile:   (703) 385-1555
Counsel for Defendants
E-mails:   sbancroft@bmhjlaw.com
              nlawrence@bmhjlaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this 6th day of August, 2012, I will electronically file the foregoing with the clerk of court using the CM/ECF system, which will send notification of such filing to the following:

Thomas H. Roberts, Esq. (VSB 26014)
tom.roberts@robertslaw.org
Andrew T. Bodoh, Esq.
andrew.bodoh@robertslaw.org
Thomas H. Roberts & Associates, P.C.
105 South 1st Street
Richmond, Virginia 23219
Telephone: (804) 783-2000
Facsimile: (804) 783-2105
Counsel for the Plaintiff


                    /s
_____
           Nicholas J. Lawrence