IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

RUSSELL L. EBERSOLE, d/b/a      )
ABERDEEN ACRES PET CARE         )
CENTER,                         )
                                )
     Plaintiff,                 )
                                )    1:12cv26 (JCC/TRJ)
          v.                    )
                                )
BRIDGET KLINE-PERRY,            )
                                )
     Defendant.                 )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on the Petition for
Attorneys' Fees and Costs (the "Petition") by Plaintiff Russell
L. Ebersole, d/b/a Aberdeen Acres Pet Care Center ("Plaintiff").
Also before the Court is Plaintiff's Bill of Costs.  For the
following reasons, the Court will grant in part and deny in part
Plaintiff's Petition, and will grant Plaintiff's request in his
Bill of Costs.

## I.  Background

This case involves libelous statements made by Kline-
Perry about Ebersole and his pet care business, Aberdeen Acres
Pet Care Center.  Kline-Perry also allegedly engaged in a
conspiracy to harm Ebersole's business.  Following local media
reports of an investigation of Ebersole arising from alleged

1

acts of animal abuse at Aberdeen Acres, Kline-Perry then made a number of statements in which she accused Ebersole of animal abuse and violating laws pertaining to dog training.  These statements were published in various e-mails and Facebook postings.  For example, Kline-Perry posted to her Norsire Farms Facebook page a letter composed by her and her friend, Charlie Oren, accusing Ebersole of animal abuse and fraudulent acts, and asked others to share it.  Kline-Perry also sent a letter to People for the Ethical Treatment of Animals ("PETA"), asking the organization to stage a protest regarding Ebersole and Aberdeen Acres due to the alleged instances of animal abuse.

On December 13, 2011, Ebersole, proceeding *pro se*, filed suit in Loudon County Circuit Court. [Dkt. 1.]  On January 9, 2012, Defendants timely removed the action to this Court on the basis of diversity jurisdiction. [*Id.*]  Ebersole subsequently retained counsel [Dkt. 14] and filed an amended complaint on March 23, 2012 [Dkt. 31].  In the amended complaint, Ebersole alleged libel, business conspiracy in violation of Va. Code § 18.2-499, and tortious interference with a business expectancy.

On July 23, a jury trial commenced.  After the close of Plaintiff's evidence, Defendant moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 with respect to the business conspiracy and tortious

interference claims as well as a portion of the libel claim. The Court granted Defendant's Rule 50 motion as to the tortious interference claim. The Court also granted Defendant's Rule 50 Motion as to certain of Kline-Perry's allegedly libelous statements. The business conspiracy claim and the libel claim (as to the remaining allegedly libelous statements) were ultimately submitted to the jury.

On July 25, 2012, the jury returned a verdict in favor of Plaintiff. The jury awarded Plaintiff $7,500 in compensatory damages on his libel claim, $7,500 in compensatory damages on his business conspiracy claim, and $60,000 in punitive damages. On July 27, 2012, the $7,500 in compensatory damages awarded to Plaintiff on his business conspiracy claim was increased to $22,500 pursuant to his entitlement to treble damages under Va. Code §§ 18.2-499 and 18.2-500.

Defendant filed a Motion for New Trial or, in the Alternative, to Alter the Judgment. [Dkt. 90.] Plaintiff filed his opposition on August 13, 2012. [Dkt. 99.] Defendant filed her reply on August 16, 2012. [Dkt. 102.] On August 29, 2012, the Court conditionally denied Defendant's Motion for New Trial or, in the Alternative, to Alter the Judgment, dependent on Plaintiff's acceptance of a remitted award of punitive damages of $15,000. [Dkt. 105.] On September 5, 2012, Plaintiff accepted the remitted punitive damages award. [Dkt. 108.]

On August 3, 2012, Plaintiff filed his Bill of Costs [Dkt. 87], which was not opposed by Defendant.  On August 6, 2012, Plaintiff filed his Petition for Attorneys' Fees and Costs [Dkt. 88].  Defendant filed her opposition on August 13, 2012, [Dkt. 100].  Plaintiff filed his reply on August 15, 2012, [Dkt. 101].  On September 5, 2012, Plaintiff filed a supplemental filing regarding his Petition for Attorneys' Fees and Costs [Dkt. 107].  Plaintiff's Petition for Attorneys' Fees and Related Costs as well as Plaintiff's request in his Bill of Costs are now before the Court.

## II.   Standard of Review

Under Virginia Code § 18.2-500(a), "Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel . . . ."  Va. Code § 18.2-500(a).

The party requesting fees bears the burden of demonstrating the reasonableness[1] of what it seeks to recover.

---

[1] Under Virginia law, in determining a reasonable fee for a conspiracy to harm a business claim, the fact-finder should consider such circumstances as "the time consumed, the effort expended, the nature of the services rendered, and other attending circumstances."  *Tazewell Oil Co. v. United Virginia Bank/Crestar Bank*, 243 Va. 94, 112 (Va. 1992) (citing *Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 449 (1991)).  The Court notes that the *Johnson/Kimbrell's* factors adopted by the Fourth Circuit adequately, if not more extensively, take into account all the factors pronounced in *Tazewell Oil* and *Mullins*.  Given this substantial similarity, the Court will apply the

*Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990); *Cook v. Andrews*, 7 F. Supp. 2d 733, 736 (E.D. Va. 1998).  The fee applicant bears the burden of establishing by clear and convincing evidence the amount of a reasonable fee in the circumstances.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The requesting party does so by producing evidence, such as the requesting attorneys' own affidavits.  "'In addition to the attorney's own affidavits, [however,] the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.'"  *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009) (quoting *Plyler*, 902 F.2d at 277).  "Examples of what constitutes satisfactory specific evidence 'sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community.'"  *Textron Financial Corp. v. AIC of Manassas, Inc.*, No. 1:09-cv-1202, 2010 WL 2928789, at *4 (E.D. Va. July 23, 2010) (quoting *Robinson*, 560 F.3d at 245); see also *Plyler*, 902 F.2d at 278.)

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably

*Johnson/Kimbrell*'s factors in deciding the reasonableness of Plaintiff's request for attorneys' fees and costs.

expended on the litigation multiplied by a reasonable hourly
rate." *Hensley*, 461 U.S. at 433; *Rum Creek Coal Sales, Inc. v.
Caperton*, 31 F.3d 169, 174 (4th Cir. 1994).  The product of the
reasonable fee and reasonable rate is referred to as the
"lodestar amount." *See Daly v. Hill*, 790 F.2d 1071, 1076 n.2
(4th Cir. 1986).  In the Fourth Circuit, when determining "what
constitutes a 'reasonable' number of hours and rate . . . a
district court's discretion should be guided by the . . . twelve
factors" adopted from *Johnson v. Ga. Highway Express, Inc.*, 488
F.2d 714, 717-19 (5th Cir. 1974).  *Robinson*, 560 F.3d at 243-44
(citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th
Cir. 1978)).

Those *Johnson/Kimbrell*'s factors are: (1) the time and
labor expended; (2) the novelty and difficulty of the questions
raised; (3) the skill required to properly perform the legal
services rendered; (4) the attorney's opportunity costs in
pressing the instant litigation; (5) the customary fee for like
work; (6) the attorney's expectations at the outset of the
litigation; (7) the time limitations imposed by the client or
circumstances; (8) the amount in controversy and the results
obtained; (9) the experience, reputation and ability of the
attorney; (10) the undesirability of the case within the legal
community in which the suit arose; (11) the nature and length of
the professional relationship between attorney and client; and

6

(12) attorneys' fees awards in similar cases. *Id.* The Court need not address all twelve factors independently, because "such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Freeman v. Potter*, No. 7:04cv276, 2006 WL 2631722, at \*2 (W.D. Va. 2006) (citing *Hensley*, 461 U.S. at 434 n.9).

"After determining the lodestar figure, the court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones. . . . [O]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Robinson*, 560 F.3d at 244 (internal quotations and citations omitted). Because the "degree of success obtained by the plaintiff is the 'most critical factor' in determining the reasonableness of a fee award, the district court 'may simply reduce the award to account for the limited success.'" *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 675 (E.D. Va. 2004) (quoting *Hensley*, 461 U.S. at 436-37). There is no "precise formula" for making this reduction to the lodestar amount; however, the court may either "reduce the overall award" or "identify specific hours that should be eliminated." *Hensley*, 461 U.S. at 436-37.

Attorneys' fees award decisions are within the discretion of the district court and are reviewed for abuse of discretion. *See McDonnell v. Miller Oil Co.*, 134 F.3d 638, 640 (4th Cir. 1998). Within this framework, the Court will evaluate the Petition.

### III. Analysis

Plaintiff seeks $131,598.25 in attorneys' fees. (Pet. [Dkt. 88] at 2-3; Supp. Filing [Dkt. 107] at 1.) In support, Plaintiff provides summaries of attorneys' fees that include the amount of time billed and brief explanations for the time billed, as well as an affidavit and supplemental affidavit from his attorney, Thomas H. Roberts, and an expert report from Dennis Whelan, Esq., attesting to the reasonableness of the fees incurred. [Dkts. 88-2, 107-1, 107-2.] Plaintiff also submits an affidavit from its attorney, Andrew T. Bodoh, explaining a clerical error in the time ledgers filed in support of Plaintiff's Petition and attesting to the otherwise accuracy of the ledgers. [Dkt. 101-1.] Plaintiff also seeks $2,531.16 in related costs beyond those in its Bill of Costs. (Pl.'s Pet. [Dkt. 88] at 3; Pl.'s Supp. Filing [Dkt. 107] at 1.) In support, Plaintiff attaches an itemized summary of additional costs in excess of the Bill of Costs, along with maps and receipts verifying such travel and lodging expenses. [Dkt. 88-1.] Finally, Plaintiff filed a Bill of Costs seeking to recover

$3,953.69. (Pl.'s Bill of Costs [Dkt. 87].) The Court will address the reasonableness of these requests in turn.

A. Attorney Fee Calculation

1. Reasonable Number of Hours

The Court first must determine whether Plaintiff met his burden of establishing the reasonableness of the number of hours for which he seeks recovery of fees. The Court notes that it was mindful of Plaintiff's duty to exercise billing judgment and paid careful attention to identify hours that appear excessive, redundant, or unnecessary. *See Hensley*, 461 U.S. at 437 ("The applicant should exercise 'billing judgment' with respect to hours worked."). With these considerations in mind, the Court will analyze the reasonableness of the hours under each of the *Johnson/Kimbrell's* factors.

a. Factor (1): Time and Labor Expended

The first Johnson/Kimbrell's factor relates to the time and labor required in a case. Plaintiff seeks $131,598.25 in attorneys' fees. In support, Plaintiff provides timesheet entries of the number of hours billed, by what attorneys, for what hourly charge, and the nature of the work completed. [Dkts. 88-2, 107-2.] In his brief and through the affidavit of his counsel, Thomas Roberts, Plaintiff argues that the time his counsel spent in litigating this case for which he seeks attorneys' fees was reasonable for a number of reasons: the

difficulty of proving a conspiracy to harm a business; the numerous emails, Facebook and other Internet postings, bankruptcy documents, and financial documents that had to be reviewed and pieced together to show the narrative and prove resulting harm in this case; the extensive pleadings by both parties in the case; and the extra burden on counsel to prepare and analyze financial materials during discover in the absence of a financial expert for Plaintiff.  (Pl. Mem. [Dkt 89] at 2, 8.; Roberts Aff. [Dkt. 88-2] at 4-5)  Additionally, Plaintiff submits the expert report of Dennis Whelan, Esq., in which Mr. Whelan asserts that the 436.1 billable attorney hours and 37.6 administrative or paralegal hours expended were reasonable "based on the complexities and difficulties of the case and especially the conspiracy to harm a business claim."  (Whelan Expert Report [Dkt. 88-2] at 2.)

In response, Defendant argues that the time claimed for the civil conspiracy count was "not reasonable and is excessive."  (Gallagher Expert Report [Dkt. 100-1] at 4.)  In support of this assertion, Defendant makes a number of specific objections to the time records presented by Plaintiff, arguing some time entries were unreasonable, unnecessary, inappropriate, and occasionally unrelated to the litigation.  (Def. Opp. [Dkt. 100] at 8-12; Gallagher Expert Report [Dkt. 100-1] at 4-6.)

i. Block Billing

First, Defendant argues that Plaintiff's counsels' consistent block billing in the time records was improper. Defendant argues that such a practice prevents the Court and defendant from being able to determine how much time is claimed for specific legal tasks, making it impossible to determine the reasonableness of the hours worked.  (Def. Opp. [Dkt. 100] at 8-9; Gallagher Expert Report [Dkt. 100-1] at 4.)  In support, Defendant cites a few cases criticizing this practice.  *See Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216 (9th Cir. 2010); *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998).

In response, Plaintiff asserts that Virginia courts have recognized block billing as a common, accepted, and efficient practice.  (Pl. Reply [Dkt. 101] at 9-10 (*citing N. Va. Real Estate, Inc. v. Martins*, 80 Va. Cir. 478, 487 (Va. Cir. Ct. 2010), *aff'd* 287 Va. 86, 117 (Va. 2012)).)  Plaintiff also argues that block billing is in line with *Hensley*, in which the Court stated that counsel "should identify the general subject matter of his time expenditures" but was "not required to record in great detail how each minute of his time was expended."  461 U.S. at 424.

"Proper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks." *EEOC v. Nutri/System, Inc.*, 685 F. Supp. 568, 573 (E.D. Va. 1988).

While counsel may not need to record their time in "great detail," numerous courts in this circuit and elsewhere have found that block billing, "the practice of group, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task" results in inadequate documentation. *Project Vote/Voting for America, Inc. v. Long*, 2012 WL 3638546 (E.D. Va. August 22, 2012) (*quoting Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006); *see also Wolfe v. Green*, 2010 WL 3809857 (S.D. W. Va. September 24, 2010) (collecting cases). Such a practice is insufficient "to permit the court to weigh the hours claimed and exclude hours that were not 'reasonably expended.'" *Guidry*, 442 F. Supp. 2d. at 294 (*quoting Hensley*, 461 U.S. at 433). Inadequate documentation practices like block billing or lumping are "a proper basis for reducing a fee because they prevent an accurate determination of the reasonableness of the time expended in a case." *Guidry*, 442 F. Supp. 2d at 294; *see also Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). As a result, when encountering such a practice, many courts have applied a percentage reduction. *See Nutri/System*, 685 F. Supp. At 577 (applying a 25% reduction in fees); *Wolfe v. Green*, 2010 WL 3809857 (S.D. W.

Va. September 24, 2010) (applying 10% reduction; collecting cases applying fee reductions for block billing ranging from 10% to 15%).

In this case, with a few exceptions, each counsel listed all their daily hours in one time entry per day.  While many of these daily entries are shorter increments of time, they still often contain a number of different tasks with no breakdown provided for each task.  For example, Mr. Bodoth's time entry for April 24, 2012 lists 0.40 hours billed for "Reviewed opposition to motion to quash; drafted notice of deposition; confirmed notice of deposition with Tomas H. Roberts, Esquire and gave direction to Sammie Griffith, Legal Assistant to send; sent same by e-email to opposing counsel." (Time Ledgers, Whelan Expert Report [Dkt. 88-2] at 30.)  This documentation method becomes even more problematic for daily time entries for larger periods of time.  For example, on May 7, 2012, Mr. Bodoth recorded 7.0 hours for "Prep for case; emails to client; interview Kieth and call other witnesses; add to presentation; prep for deposition." (*Id.* at 31.)  Such an entry prevents the court from assessing the amount and reasonableness of the time spent for any one of the individual and differing tasks listed.  After reviewing all the time records provided, the Court concludes that a 15% reduction in the initial lodestar

amount is warranted in light of this consistent practice of block billing.

### ii.   Research on Demurrers

Second, Defendant objects to the time recorded for research on demurrers, arguing that issues raised by the demurrer were "entirely straightforward, and should not have required any research to address." (Def. Opp. [Dkt. 100] at 9.) Plaintiff responds that some work was necessary to research the law related to suing sole proprietorships and non-entities. (Pl. Reply [Dkt. 101] at 11.)  Plaintiff also notes that the time entry in question only recorded two hours of time, and included drafting a notice of appearance, conferring with co-counsel regarding the case, reviewing documents provided by Plaintiff, and communicating with Plaintiff in addition to the research on demurrers. (*Id.*)

It does not appear unreasonable to the Court that counsel spent a short period of time on researching the law and underlying facts regarding Plaintiff's attempt to sue Defendant and her farm, Norsire Farm.  Moreover, any ambiguity in exactly how long this research took is covered by the Court's percentage reduction of fees in response to Plaintiff's counsels' practice of block billing.

### iii. Research on Abuse of Process

Third, Defendant objects to the "substantial time" recorded for research of "abuse of process" and asserts that this research appears to be completely irrelevant to the case and associated claims. (Def. Opp. [Dkt. 100] at 9.) Plaintiff explains that this research was in response to a statement in Defendant's opposition to Plaintiff's motion to leave to file an amended complaint, which represented that Plaintiff had abused the bankruptcy court's subpoena power. (Pl. Reply [Dkt. 101] at 10-11 (*citing* [Dkt. 15] at 2, 4, 8).) The time entries for this research total only 1.6 billable hours. (Time Ledgers, Whelan Expert Report [Dkt. 88-2] at 24-25.) The Court finds that arguments related to this asserted abuse of the bankruptcy court's power were a significant portion of the opposition brief in question, and that the small amount of time billed to research this issue in order to respond to those arguments was reasonable.

iv.  Work on Motion to Quash

Fourth, Defendant argues that the 31.8 hours related to Plaintiff's motion to quash a subpoena were unreasonable because Defendant asserts that the subpoenaed records regarding Plaintiff's LLC were clearly relevant and because Plaintiff ultimately withdrew the motion right before the scheduled court hearing on it. (Def. Opp. [Dkt. 100] at 9.) Defendant also objects to a specific time entry on May 4, 2012 which references

a hearing which it asserts never occurred.  Plaintiff counters
that his motion was not frivolous for several reasons: the Court
deemed it important enough to justify both a telephonic
conference on May, 4, 2012 and a second scheduled hearing in
court (the latter of which never occurred); Plaintiff's eventual
withdrawal of the motion was due to the high costs that this
scheduled hearing would entail; and Defendant's ultimate
decision to not depose Plaintiff on the LLC records and not use
the documents at trial supports the merits of Plaintiff's motion
to quash, that the records were irrelevant.  (Pl. Reply [Dkt.
101] at 12.)

        The Court finds that Plaintiff's hours related to this
motion generally were reasonable.  However, in terms of
Defendant's specific objection to the block of 9.5 billable
hours on May 4, 2012 which in part references a hearing that it
claims was never held, the Court notes that this concern is only
partially addressed by Plaintiff's explanation regarding the
telephonic hearing.  In addition to time billed for "hearing on
MTQ" and "discuss outcome with client," the block entry includes
the tasks of "Continue to work on presentation" and "conference
with Thomas H. Roberts, Esquire re jury instructions."  Given
that the hearing was only a telephonic hearing, the Court
believes that 9.2 hours billed for the listed tasks seems
particularly excessive.  The Court believes that the overall

percentage reduction for block billing does not fully resolve this problem.  As a result, the Court also will apply a 50% reduction to the hours in this particular time entry.

### v. Time on Proposed Stipulations

Fifth, Defendant argues that Plaintiff's counsel spent an unreasonable and unnecessary amount of time spent on preparing proposed stipulations because these stipulations were duplicative of the requests for admission and were not provided in time to Defendant to be of any use in litigation.  (Def. Opp. [Dkt. 100] at 9.)  Plaintiff responds that these stipulations were an attempt to narrow the issues before the court and the jury, an attempt in which Defendant chose not to participate. (Pl. Reply [Dkt. 101] at 12.)

Counsels' time for preparing and filing the stipulations is included in a block of billable time of 5.4 hours on May 16, 2012, a block which also includes the task "discuss settlement" and "talk to witness Cundiff."  (Time Ledgers, Whelan Expert Report [Dkt. 88-2] at 32.)  It is difficult to determine what proportion of time was devoted to the stipulations versus discussing the settlement and talking to a witness due to the block billing.  The Court's decision to reduce the initial lodestar amount for block billing partially addresses this issue.  However, it seems appropriate to the Court to also subtract some hours from this time entry.  The

17

stipulations filed with the court consist solely of exact copies
of the Defendant's responses to Plaintiff's requests for
admissions, Defendant's answer to the amended complaint, and the
amended complaint itself, with the sole modification of thin red
boxes around various statements that Defendant had admitted were
true.  [Dkt. 45, 45-1, 45-2, 45-3, 45-4.]  The 5.4 hours in the
time entry at issue seems to be an excessive amount of time to
compile these documents, add the minor change of the red
outlining to portions of the documents, file them, and also
discuss the settlement and talk to a witness.  As a result, the
Court also will apply a 50% reduction to the hours in this
particular time entry.

vi.   Time On Jury Instructions

Sixth, Defendant asserts that Plaintiff's counsel
spent an excessive amount of time on the preparation of jury
instructions.  (Def. Opp. [Dkt. 100] at 11-12.)  Defendant
states that there are 26 separate entries on 18 different days
regarding work on jury instructions, for a total of
approximately 30 billable hours.  (*Id.* at 11; Gallagher Report
[Dkt. 100-1] at 5.)  Moreover, the proposed jury instructions
were over 100 pages and incorporated law from outside
jurisdictions instead of focusing on Virginia law and relying on
Virginia's Model Jury Instructions.  (Def. Opp. [Dkt. 100] at
11-12.)  As a result, Defendant argues the amount of time spent

was unreasonable.  Plaintiff counters that the "thoroughness" of the jury instructions, accompanied by detailed memorandum where counsel deemed it appropriate, was "necessary in light of the legal complexities of this defamation-based conspiracy-to-harm-a-business claim."  (Pl. Mem. [Dkt. 101] at 9.)

The Court agrees that the parties are obligated under Local Rule 51 to research and prepare jury instructions.  The Court, however, disagrees with Plaintiff's assessment of the difficulty of this case, and the resulting asserted need for such an extensive amount of time and effort spent on jury instructions and accompanying memorandum.  In addition, according to the Court's independent review of the records, there actually were 28 different entries for work on jury instructions in part or in whole, for a total of 73 hours billed.  As with a number of time entries to which Defendant objects, the issue with the time entries for the jury instructions is compounded by the practice of block billing.  It therefore is difficult for the Court to determine precisely the total time spent solely on these instructions.  Nonetheless, it appears clear that the time spent was excessive.  The Court therefore will apply a 50% reduction to the time entries relating solely to jury instructions, and a 30% reduction to those related in part to jury instructions.

vii. Time on Motion for Judicial Notice

Seventh, Defendant argues that the counsels' time on briefing motions related to judicial notice was unnecessary and did not advance Plaintiff's interests. (Def. Opp. [Dkt. 100] at 11.) Plaintiff responds that although the court ultimately denied Plaintiff's motion for judicial notice on the absence of law, the extensive briefing was necessary because the issue would have been very helpful to Plaintiff if accepted by the court. While the motion itself was not successful, the 15.65 hours expended on the associated briefing does not appear unreasonable to the Court. The Court notes that although it "must consider the overall result of the litigation in terms of the moving party's success, no authority exists which persuades the Court to reduce the fee award for reasonable, but unsuccessful tactics within the litigation. The Court's inquiry is simply whether the time was reasonably expended." *Cnty Sch. Bd. of York Cnty, Va. V. A.L.*, 2007 WL 756586 (E.D. Va. Mar. 6, 2007); *see also Jaffee v. Redmond,* 142 F.3d 409, 414 (7th Cir. 1998)(noting "a losing argument in support of a successful claim for relief is fully compensable time").

> viii.  Time Billed for Interoffice Communications/Conferences; Simple, Routine Legal Research and Discovery; Administrative or Clerical Work

Eighth, Defendant argues that there are a number of time entries tasks which categorically "did not advance the client's interest or litigation," are "routinely not charged to the client," and need "not be performed by a professional." (Gallagher Report [Dkt. 100-1] at 4-5.)  Defendant identifies such time entries as those for interoffice communications among the attorneys, simple and routine discovery, simple legal research as to elements of various torts, and administrative or clerical work.  (*Id.*)  In response, Plaintiff asserts that these objections are not supported by Va. Code § 18.2-500.

The Court agrees with Plaintiff.  Regarding the interoffice communications and simple discovery and legal research, the Court finds no authority indicating that fees billed for such work are not recoverable under Va. Code § 18.2-500 as "reasonable attorney fee[s]."  These hours therefore will not be excluded.

In addition, the Court has reviewed the time entries alleged to be administrative or clerical work.  Based on this review, it appears that such tasks were recorded in almost all occasions by Plaintiff's counsel's legal assistant at an administrative rate.  While courts have noted that it "is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by

non-lawyers," such courts only indicate that this clerical work
should "command a lesser rate," not that it should be excluded
entirely from the fees to be recovered.  *Missouri v. Jenkins*,
491 U.S. 274, 288 n. 10 (1989) (*quoting Johnson*, 488 F.2d at
717).  Moreover, Defendant has provided no authority indicating
that such hours are not recoverable under Va. Code § 18.2-500.
As a result, these hours also will not be excluded.

ix.  29 Hours Billed in One Day

Ninth, Defendant objects to the time records for May
8, 2012, in which counsel billed 29 hours in one day.  (Def.
Mem. [Dkt. 100] at 12; Gallagher Report [Dkt. 100-1] at 5.)
Defendant also argues that even if the time entries were the
result of a mistake regarding the recorded date, the overall
time spent on similar tasks from May 3 through the week of May
7, 2012 were excessive, totaling over 50 hours.  (Gallagher
Report [Dkt. 100-1] at 5.)  In his reply and accompanying
affidavit by counsel, Plaintiff clarifies that the 29 hours
billed in one day were the result of a technical error, in which
time records for multiple days were recorded instead in one day.
(Pl. Reply [Dkt 101] at 11; Bodoh Aff. [Dkt 101-1] at 1-2.)  In
addition, counsel notes in his affidavit that the hours billed
during the surrounding week were significant given the impending
close of discovery and the work associated with the deposition
of Defendant.  (Bodoh Aff. [Dkt 101-1] at 2.)  Based on

22

counsel's explanation regarding the May 8th time records, and the Court's considerations of the nature of the tasks for which time was billed from May 3 through May 15, 2012, the Court finds these hours reasonable.

x. Work on Fee Petition

Finally, Defendant challenges the time billed for the preparation of the petition for attorney's fees.  Defendant argues that this time is not properly billed in a request for attorney's fees. (Gallagher Report [Dkt. 100-1] at 6.)  Even if such time is recoverable, Defendant argues that the 19.2 hours it calculates was billed for this task were excessive.

In Virginia, attorney's fees may be awarded for post-verdict motions in business conspiracy claims.  *See Tazewell Oil Co. v. United Virginia Bank/Crestar Bank*, 243 Va. 94 (Va. 1992) (awarding $47,000 for attorney's fees and costs incurred subsequent to trial).  However, reviewing all the time ledgers submitted, Mr. Roberts spent 2.4 hours on this task, Mr. Bodoh spent 46.5 hours, their paralegal spent 2 hours, and the legal assistant spent 0.2 hours, for a total of 51.1 hours overall. Given counsel's familiarity with the case, the Court finds that the amount of time spent on preparing the petition was excessive and that a 50% reduction of these hours is appropriate.

b. Factors (2), (3), and (9): Novelty and

Difficulty of Questions Raised; Skill Required;

Experience, Reputation, and Ability of
Attorneys

Regarding the novelty and difficulty of the questions raised, Defendant argues that this was a case of average complexity based on the torts sued for in this case. (Gallagher Report [Dkt. 100-1] at 4, 6.) Defendant asserts that the skill required to properly perform the legal services was that of a competent trial attorney, given the average complexity of the case. (*Id.*) And based on the firm website for Plaintiff's counsel, Defendant argues that the experience, reputation, and ability of Plaintiff's counsel in handling complex trials and litigating defamation, conspiracy and tortious interference claims, indicate that they should have been able to handle this case while expending less billable time. (*Id.* at 4, 6-7 (*citing* Roberts Aff., Whelan Report [Dkt. 88-2]).)

Plaintiff counters that this case did have some "relatively novel" issues of law and some unique difficulties due to the facts at hand. (Pl. Mem. [Dkt. 89] at 8.) Plaintiff argues that such issues of law included the application of Virginia Code § 18.2-499 and -500 to defamatory emails and Facebook postings, as well as the question of judicial notice on the absence of law and the issue of attempted conspiracy. (*Id.*) In addition, Plaintiff notes the difficulties raised by Plaintiff's ongoing bankruptcy, as well as the difficulties

24

arising from Plaintiff's prior convictions and outstanding allegations of animal abuse which created a "substantial risk of jury prejudice" and "serious" complications in proving damages given the "mixture of fact and fiction in the Defendant's posts." (*Id.*; Roberts Aff., Whelan Report [Dkt. 88-2] at 5-6.) As a result, Plaintiff asserts that the skill required was above the average skill for defamation-based litigation. (*Id.*) Moreover, in the hearing on this petition, Plaintiff noted that this was the first jury trial by the lead attorney, Mr. Bodoh.

Based on the claims at issue and the underlying facts, the Court does not believe that this case was particularly complicated. In addition, the Court notes that Plaintiff's counsel indicated in his affidavit that the firm "has earned a reputation for taking on novel and complex matters" and that Mr. Roberts has "extensive experience in . . . defamation cases." (Roberts Aff., Whelan Report [Dkt. 88-2] at 3.) However, the Court acknowledges that the fact that this was the first jury trial for the lead attorney, Mr. Bodoh, weighs in favor of a slightly higher amount of time billed. Given these factors, the Court believes that the over 500 hours billed in this case (accounting for the additional hours billed post trial) are somewhat excessive. The deductions and percentage reductions made based on the time/effort *Johnson/Kimbrall* factor

in Section III.A.1.a, however, address this concern and are a sufficient adjustment to the fees claimed.

c. Factor (4): Attorney's Opportunity Costs in
Pressing Instant Litigation

In considering opportunity costs, courts often look to the drain of resources on a firm during the litigation, the length of the litigation, and, in some cases, the unpopularity of the case. *See Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987) (noting that counsel "incurred substantial opportunity costs in pursuing the litigation, given the drain of resources on their four-person firm and the unpopularity of their case within the community"); *United States ex rel. Thyssenkrupp Safway,* 2011 WL 2633902, at *5 (E.D. Va. July 5, 2011) (noting that "time spent does not seem to the Court to have been so voluminous to have precluded other representation on the part of [] counsel"); *Walker v. Dovetails, Inc.*, No. 3:10cv526-HEH, 2010 WL 5878336, at *6 (E.D. Va. Nov. 30, 2010)(noting that since the case resolved in one week and the costs associated with discovery were avoided, the case imposed little opportunity costs on counsel).

Plaintiff argues that his counsel's firm's opportunity costs were "notable" in this case based on the expedited schedule, the amount of time billed to prosecute the case, and the small size of the firm (three attorneys) despite these

demands.  (Pl. Mem. [Dkt. 89] at 9.)  While Plaintiff asserts
that the undesirability of the case weighs in favor of the
reasonableness of the fees, to be discussed in this opinion
below, he does not raise this as a factor affecting counsel's
opportunity costs.  Defendant briefly asserts that nothing was
presented revealing anything unusual about this litigation with
regards to opportunity costs.  (Def. Opp. [Dkt. 100] at 6.)

     The Court finds that Plaintiff has not alleged
sufficient opportunity costs for this factor to be pertinent to
the attorneys' fee award.  While there may have been some drain
on this small firm's resources, the vast majority of the hours
recorded were billed by Mr. Bodoh.  As a result, the most senior
attorney in the firm, Mr. Roberts, and the other attorney in the
firm, Mr. Didlake, were substantially free to take on other
cases.  In addition, given that the case took approximately
seven months, the over 350 hours billed by Mr. Bodoh should not
have significantly constrained him either.  If compressed into
40 billable hour work weeks, these hours account for a little
less than 9 weeks out of the entire seven month period.  Thus,
the opportunity cost factor will not affect the Court's
determination.

     d. Factors (5): Customary Fee for Like Work

     The Court will address the hourly rates used by
Plaintiff in calculating the attorneys' fees in Section III.A.2.

27

e. Factor (7): Time Limitations Imposed by Client
or Circumstances

The seventh factor relates to any time limitations imposed by clients or circumstances.  Plaintiff argues that although the time limitations were standard for the Eastern District of Virginia, the time constraints were somewhat increased because Plaintiff retained counsel after the case was initiated.  (Pl. Mem. [Dkt. 89] at 9.)  Plaintiff also notes that Defendant chose this forum with its accompanying expedited litigation schedule, and that the previously described difficulties of the case increased the time pressure counsel faced.  (*Id.*)  Defendant responds that as members of the Eastern District of Virginia, Plaintiff's counsel should have been able to handle this case, including meeting any timetables set in this district.  (Gallagher Report [Dkt. 100-1] at 6.)

The Court does not believe that time limitations in this case warrant special consideration as "[a]ll litigants are pushed to trial in this Court." *Niccoli v. Runyon*, 1995 WL 811946, at *2 (E.D. Va. 1995).  The Court does not find that the delay in retaining counsel significantly changes the general time constraints that counsel were expected to master as a matter of course in this district.  Thus, the Court will not take this factor into consideration in determining the reasonable attorneys' fee award.

28

f. Factor (8): Amount in Controversy and Results
   Obtained

The eighth *Johnson/Kimbrell's* factor discusses the
amount in controversy in the case and the result ultimately
obtained by the prevailing party.  In the amended complaint,
Plaintiff alleged libel, business conspiracy in violation of Va.
Code § 18.2-499, and tortious interference with a business
expectancy.  [Dkt. 31.]  For these claims, Defendant requested
$1,000,000 in compensatory damages and $350,000 in punitive
damages.  (*Id.*)  During the jury trial, the Court granted
Defendant's Rule 50 motion as to the tortious interference claim
and some of Defendant's allegedly libelous statements.
Following the jury trial, Plaintiff prevailed on the business
conspiracy claim and the remaining libelous claim, receiving
$30,000 in compensatory damages (including treble damages for
the conspiracy claim) and $60,000 in punitive damages, the
latter of which was remitted to $15,000.

The Court will further discuss and account for this
factor in part III.A.5 below.

g. Factor (10): Undesirability of Case Within
   Legal Community in Which Suit Arose

The tenth factor addresses the undesirability of the
case within the legal community in which the suit arose.
Plaintiff contests that this factor weighs heavily in favor of

the attorney's fees required, arguing that the case was
generally less desirable given the probable difficulty in
proving damages, the high risk of prejudice against Plaintiff
given the allegations and his prior convictions for animal
abuse, the increased business and litigation risk due to
Plaintiff's bankruptcy, and the limited amount of time for
damages to actualize due to the expedited litigation schedule.
(Pl. Mem. [Dkt. 89] at 11.)  Defendant does not contest this
argument, responding only to acknowledge that there was some
information regarding Plaintiff's criminal history which may
have made his case less appealing to a jury.  (Gallagher Report
[Dkt. 100-1] at 7.)

        As a result, the Court will take the relative
undesirability of the case into consideration when makings its
final determination of attorneys' fees, noting that this factor
weighs in favor of finding the requested fees reasonable.

                h. Factor (12): Attorneys' Fees Awards in Similar
                   Cases

        In support of the attorney's fees claimed, Plaintiff
cites four business conspiracy cases awarding attorney's fees of
amounts around or substantially higher than the amount sought
here.  (Pl. Mem. [Dkt. 89] at 12 (*citing Syed v. Zh Techs.,
Inc.*, 280 Va. 58, 73 (2010) ($644,447.35 in attorney fees and
$31,943.30 in costs awarded, but award reversed when the Supreme

court reversed on the conspiracy claim); *Tazewell Oil Co. v. United Virginia Bank/Crestar Bank*, 243 Va. 94, 111 (Va. 1992) (awarding $472,000 in attorney fees); *Greenspan v. Osheroff*, 232 Va. 388, 397 (Va. 1986) (awarding $90,000 in attorney fees); *Advanced Mgmt. Tech., Inc. v. Overlook Sys. Techs.*, Inc., 2000 WL 1210889, at *2 (Va. Cir. Ct. May 5, 2000) (awarding $400,000 in attorney fees). Defendant does not address these citations, arguing only that in the experience of Defendant's expert, the fees claimed are not in accordance with similar cases. (Gallagher Report [Dkt. 100-1] at 7).

Although the award amounts cited by Plaintiff appear on their face to support the fees claimed here, a review of the underlying damages recovered in those cases also is informative. In all of those cases, the large amounts of attorney's fees were billed as part of cases which ultimately recovered anywhere from $300,000 to over $4,000,000 in damages for the plaintiffs. While the amount of attorney's fees billed may not always be proportional to the recovery gained, the large size of both the damages and attorney's fees awarded in these cases do suggest that these may have been bigger cases requiring more effort to properly prosecute. Thus, it is not clear that these were "similar cases." Plaintiff has provided no evidence of the cases' similarity other than that they involved a business

conspiracy claim.  As a result, the Court finds that this factor does not weigh in support of the attorney's fees claimed.

### i. Additional Factors

The Court does not believe that the following factors warrant special consideration in this case: the attorneys' expectations at the outset of the litigation; and the nature and length of the professional relationship between attorney and client.  There is no evidence presented on any of these factors that the Court finds would affect its attorneys' fees award analysis.

### 2. Reasonable Rates

The prevailing party's requested hourly rates must be reasonable.  *Rum Creek Coal Sales*, 31 F.3d at 175 (*citing Hensley*, 461 U.S. at 433).  The determination of the reasonableness of given rates is a "fact-intensive [one] and is best guided by what attorneys earn from paying clients for similar services in similar circumstances."  *Id.* (*citing Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  To carry this burden, a plaintiff can establish the market rate "through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the

market." *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)
(citations omitted).  This evidence must be submitted "[i]n
addition to the attorney's own affidavits." *Plyler v. Evatt,*
902 F.2d 273, 277 (4th Cir. 1990).

Plaintiff's counsel charged the following rates for
the attorneys involved: Mr. Roberts, $365 per hour; Mr. Didlake,
$265 per hour; and Mr. Bodoh, $250 per hour.  (Roberts Aff.,
Whelan Report [Dkt 88-2] at 18.)  Plaintiff provides an
affidavit from his counsel, Mr. Roberts, indicating that the
rates charged are the standard hourly rates for the members of
the firm.  (*Id.*)  Plaintiff also provides an expert report by
Mr. Whelan in which he states that the billing rates charged in
this case are "reasonable rates considering their individual and
collective skill, education, experience, and the circumstances
of the firm" and in his opinion are "comparable and generally
coincide with the then prevailing market rates of attorneys in
the Eastern District of Virginia of similar skill and for
similar work."  (Whelan Report [Dkt. 88-2] at 2.)  To support
and illustrate this point, Mr. Whelan also reviewed the United
States Attorney's *Laffey* Matrix, Updated *Laffey* Matrix,[2] and the

---

[2] The Laffey Matrix is used as a guideline for reasonable attorney fees in the
Washington/Baltimore area. See *Bd. of Trs., Sheet Metal Workers' Nat'l
Pension Fund v. E. Sign Tech, LLC*, 2006 U.S. Dist. LEXIS 72345, at *7 (E.D.
Va., Oct. 4, 2006) (using the Laffey matrix as evidence of reasonableness).
The United States Attorney's Office for the District of Columbia hosts the
matrix on its website. *See*
http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf.  The
rates are adjusted for cost of living and are based on rates found reasonable

2011 Law Firm Billing Survey from the *National Law Journal*.
(*Id.* at 3, 5-14.)

Plaintiff notes that Mr. Roberts' fee is 27.7% below
the U.S. Attorney Office's *Laffey* Matrix rate for 2012-2013, and
51.5% below the current rate set in Updated *Laffey* Matrix (20+
years' experience); Mr. Didlake's fees are 8.6% below the U.S.
Attorney Office's *Laffey* Matrix rate and 30.8% below the current
rate on the Updated *Laffey* Matrix (4-7 years' experience); and
that Mr. Bodoh's rate is 2.0% above the U.S. Attorney Office's
*Laffey* Matrix rate and 19.9% below the current rate on the
Updated *Laffey* Matrix (1-3 years' experience).  (Pl. Mem. [Dkt.
89] at 4.)  Plaintiff also argues that these matrixes and
surveys are useful objective evidence for comparison because the
rates that Plaintiff's counsel billed generally are
significantly lower than the rates in those sources.  (Pl. Reply
[Dkt. 101] at 7-8.)

In response, Defendant argues that Plaintiff's
reliance on the *Laffey* Matrix and National Law Journal Survey is
misplaced because the Fourth Circuit has not adopted the *Laffey*
Matrix, and because the rates in both sources reflect
Washington, D.C. and national law firm rates which are not
relevant to the district and the firm at issue here.  (Def. Opp.

in *Laffey v. Nw. Airlines*, 746 F.2d 4, 24-25 (D.C. Cir. 1985), *overruled in
part on other grounds by Save Our Cumberland Mountains, Inc. v. Hodel*, 857
F.2d 1516, 1524 (D.C. Cir. 1988).

[Dkt. 100] at 7-8.)  In support, Defendant attaches the expert report of Mr. Gallagher, a local attorney, who states—without any additional objective evidence—that in his "experience from handling and trying cases that include the tasks in the present case, the claimed rates are not in accord with similar cases" and do not compare or generally coincide with the prevailing market rates in Northern Virginia, including the Eastern District of Virginia.  (Gallagher Report [Dkt. 100-1] at 3, 6, 7.)  Mr. Gallagher states that it is his opinion that the reasonable rates for the attorneys are as follows: Mr. Roberts, $335 per hour; Mr. Didlake, $200 per hour; and Mr. Bodoh, $200 per hour.  (*Id.* at 3.)

This Court recognizes, as it has done so recently, that it is not bound by the *Laffey* Matrix.  *See United States ex rel. Thyssenkrupp Safway, Inc.*, No. 1:10cv512, 2011 WL 2633902, at *5.  The Fourth Circuit has recognized, though, that "the *Laffey* matrix is a useful starting point to determine fees" and that a court "may consider" the matrix despite not being bound by it.  *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009).  In addition, in this case, Plaintiff does not request rates in line with those recommended by the original and updated matrix, but rather rates generally substantially lower.  Furthermore, Plaintiff did not provide only the affidavits of its own attorneys and reference the

*Laffey* Matrix.  Plaintiff also provided the "affidavit[] of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community" through the expert report of Mr. Whelan, an example of the "type of specific evidence that [the Fourth Circuit] ha[s] held is sufficient to verify the prevailing market rates."  *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 245 (4th Cir. Va. 2009).  The fact that Defendant's local attorney expert disagrees with Plaintiff's expert's opinion does not mean that Plaintiff has not met his burden of proof.

When evaluating fees in the Northern Virginia area, however, the Fourth Circuit has modified the *Laffey* matrix and applied market rates as indicated in the table provided below:

| *Grissom Table* | | |
|---|---|---|
| *Title* | *Years' Experience* | *Hourly Rate* |
| Partner | 8-19+ | $335.00-380.00 |
| Associate | 6-7 | $250.00 |
| Associate | 5-6 | $250.00 |
| Associate | 2-3 | $200.00 |
| Associate | 1 | $180.00 |

*Grissom v. Mills Corp.*, 549 F.3d 313, 323 (4th Cir. 2008).[3] Moreover, in recent decisions, this Court has assessed the reasonableness of Northern Virginia attorneys' rates "bearing in

---

[3] The Court notes that the decision lists the "partner" year range as 18-19+, but given the previous range ending at year 7, the Court assumes that the "partner" range listed contained a typographical error and was supposed to start at the next year, year 8.

mind each of these resources, but giving the greatest heed to
the Fourth Circuit's guidance in *Grissom*." *United States ex
rel. Thyssenkrupp Safway, Inc.*, No. 1:10cv512, 2011 WL 2633902,
at *6-7 (*quoting United States, ex rel. Ubl v. IIF Data
Solutions*, No. 1:06cv641, 2010 WL 1726767, at *9 (E.D. Va. April
28, 2010).

      With regards to Mr. Roberts, Plaintiff seeks fees in
the amount of $365 per hour.  Mr. Roberts has over 26 years of
experience practicing civil litigation, particularly in personal
injury, civil rights, and defamation cases.  (Roberts Aff.,
Whelan Report [Dkt. 88-2] at 2-3.)  The hourly rate for an
attorney with 20+ years of experience in 2011-12 is $495 under
the original *Laffey* Matrix, $734-753 under the updated *Laffey*
Matrix, and a maximum of $380 under the *Grissom* Table.
Moreover, this Court has recently found that $350 and $375 for
counsel with 31 years of experience was reasonable in light of
the *Grissom* Table.  *See BP Products North America, Inc. v.
Stanley*, No. 1:09cv1147, 2010 WL 3473791, at *2 (E.D. Va.
September 1, 2010).  Based on these considerations, and the
record in this case, the Court concludes that an hourly rate of
$365 is appropriate for Mr. Roberts.

      With regards to Mr. Didlake, Plaintiff seeks fees in
the amount of $265 per hour.  Mr. Didlake has approximately 8
years of experience practicing civil litigation privately and

for the government.  (Roberts Aff., Whelan Report [Dkt. 88-2] at 3-4.)  The hourly rate for an attorney with 8-10 years of experience in 2011-12 is $350 under the original *Laffey* Matrix, $540-554 under the updated *Laffey* Matrix, and a range of $335-380 under the *Grissom* Table.  Thus, the Court concludes that an hourly rate of $265 is appropriate for Mr. Didlake.

Finally, with regards to Mr. Bodoh, Plaintiff seeks fees in the amount of $250 per hour.  Mr. Bodoh has only 2 years of experience practicing civil litigation, and this was his first jury trial.  (Roberts Aff., Whelan Report [Dkt. 88-2] at 3-4.)  The hourly rate for an attorney with 1-3 years of experience in 2011-12 is $240 under the original *Laffey* Matrix, $305-312 under the updated *Laffey* Matrix, and $200 under the *Grissom* Table.  Based on these considerations, in particular the *Grissom* Table, the Court concludes that an hourly rate of $250 was somewhat excessive for Mr. Bodoh and that his rate should be reduced to $200 per hour.

### 3. Lodestar Amount

Plaintiff requested $131,598.25 in attorneys' fees. After taking into account the *Johnson/Kimbrall's* factors as evaluated above and assessing the reasonableness of the rate, the Court finds the following adjustments are appropriate. First, the Court has determined that Mr. Bodoh's rate should be reduced to $200 per hour.  Based on the time ledgers submitted

along with the initial fee petition and supplemental filing,
Plaintiff seeks to recover fees for a total of 387.85 hours
billed by Mr. Bodoh.  At an hourly rate of $250, this time
accounts for $96,962.50.  Reducing the hourly rate to $200
decreases the total attorney's fees claimed by $19,392.5.

    Second, as set out in Section III.A.1.a.iv, the Court
applies a 50% reduction to the 9.5 hour block entry on May 4,
2012 associated with the motion to quash billed by Mr. Bodoh.
Thus, 4.75 hours are subtracted from Mr. Bodoh's bill,
decreasing the attorney's fees by $940 under his adjusted rate
of $200 per hour.  Second, as set out in Section III.A.1.a.v,
the Court applies a 50% reduction to the 5.4 hour block entry on
May 16, 2012 related to work on the proposed stipulations billed
by Mr. Bodoh.  Thus, 2.7 hours are subtracted from Mr. Bodoh's
bill, decreasing the attorney's fees by $540 under his adjusted
rate of $200 per hour.

    Third, as set out in Section III.A.1.a.vi, the Court
applies a 50% reduction in hours to all time entries devoted
solely to work on the jury instructions and a 30% reduction in
hours to block time entries accounting in part for this task.[4]
In entries solely devoted to work on jury instructions, Mr.
Didlake billed 2 hours.  His hours are therefore reduced by 1

---

[4] The Court does not apply this reduction to Mr. Bodoh's time for May 4, 2012
because this entry has already been sufficiently adjusted by a reduction
related to excessive work on the motion to quash and other tasks in the block
entry.

hour, decreasing the total attorney's fees by $265.  Ms. Griffith billed 1 hour solely on jury instructions.  Her hours are therefore reduced by one half hour, decreased the total fees claimed by $25.  Mr. Bodoh recorded 13.7 hours solely on jury instructions and 46.8 hours on entries including work on jury instructions.  Applying a 50% reduction to the former and a 30% reduction to the latter, Mr. Bodoh's hours are reduced by 30.25 hours.  This decreases the total fees claimed by $6,050 under his adjusted rate of $200 per hour.

Fourth, as set out in Section III.A.1.a.x, the Court applies a 50% reduction to the hours spent on work associated with the fee petition.  Mr. Roberts spent 2.4 hours on this task, Mr. Bodoh spent 46.5 hours, their paralegal spent 2 hours, and the legal assistant spent 0.2 hours.  Applying this reduction decreases the total fees claimed by $5,258.

These individual deductions decrease the total fees claimed from $131,598.25 to $99,127.75.  Finally, as discussed in Section III.A.1.a.i, the Court applies a 15% deduction to the initial lodestar amount to account for the block billing used by Plaintiff's counsel.  This reduces the final lodestar amount to $84,258.59.

### 4. Unrelated and Unsuccessful Claims

After calculating the lodestar figure, the "court then should subtract fees for hours spent on unsuccessful claims

unrelated to successful ones." *Johnson v. City of Aiken*, 278
F.3d 333, 337 (4th Cir. 2002).  Defendant argues that Plaintiff's
total fee request should be substantially reduced to account for
the work that Plaintiff's counsel performed on his unsuccessful
claim of tortious interference with contract and on his claim
for defamation, on which Plaintiff was successful but there is
no statutory authority for the award of attorney's fees.  (Def.
Opp. [Dkt. 100] at 3-7.)  To advance this argument, Defendant
relies on the *Ulloa* case in which the Virginia Supreme Court
stated that the party seeking attorney's fees had the "burden to
establish to a reasonable degree of specificity those attorney's
fees associated with" the claim for which attorney's fees were
recoverable.  *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 50 (Va. 2006).[5]

In response, Plaintiff argues that this burden from
*Ulloa* is met where, as here, the work that a party performs to
prosecute an unsuccessful claim (or a successful claim for which
attorney's fees may not be recovered statutorily) also is used
to properly prosecute a successful claim for which attorney's
fees may be recovered.  (Pl. Reply [Dkt 101] at 5-7.)  Plaintiff

---

[5] Defendant also argues in the alternative that under federal case law, namely
*Fox v. Vice*, 131 S. Ct. 2205 (2011), Plaintiff has failed to meet the Supreme
Court's "but for" test in distinguishing between claims for which attorney's
fees are and are not recoverable. (Def. Opp. [Dkt. 100] at 5-7.)
Defendant's reliance on *Foz* is misplaced here.  The Supreme Court explicitly
stated that the framework and test in *Fox* applied to a different situation
than the *Hensley* framework.  *Fox*, 131 S. Ct. at 2215 n.3.  *Hensley* "govern[s]
fee awards to plaintiffs in cases involving both successful and unsuccessful
claims," whereas *Fox* addresses the "authoriz[ation] [of] fees to *defendants*
to remove the burden of fending off frivolous claims."  *Fox*, 131 S Ct. at
2215 n.3 (emphasis added).

argues that a party meets this burden for a total award of fees
if he shows that the fees for solely prosecuting the claim for
which a fee award is recoverable would have been "substantially
the same . . . whether additional, factually intertwined but
legally distinct counts had been brought." *Tazewell Oil Co.*,
413 S.E.2d 611, 620 (Va. 1992); *see also Hensley*, 461 U.S. at
434.

      The Court finds that no further reduction is necessary
because in this case all of Plaintiff's claims arose from a
"common core of facts." *See Brodziak v. Runyon*, 145 F.3d 194,
197 (4th Cir. 1998) (quoting *Hensley v*, 461 U.S. at 435).  The
holding in *Ulloa* simply places the burden on a party seeking
attorney's fees to establish that the fees sought are
"associated" with a successful claim.  *Ulloa*, 271 Va. at 83.
The showing required to meet this burden is consistent with the
analysis set out in *Hensley*, as well as the test in *Tazewell
Oil*.  At this point in the *Hensley* analysis, "the appropriate
inquiry concerns whether the claims on which the plaintiff
prevailed are *related* to those on which he did not."  *Id.*
(emphasis added).  The Court acknowledges that it is well
established that no attorneys' fee should be awarded for time
spent pursuing unsuccessful claims unrelated to successful
claims.  *Hensley*, 461 U.S. at 434-35.  However, in a case where
the "plaintiff's claims for relief . . . involve a common core

42

of facts or [are] based on related legal theories," "[m]uch of
counsel's time will be devoted generally to the litigation as a
whole, making it difficult to divide the hours expended on a
claim-by-claim basis" and such a case "cannot be viewed as a
series of discrete claims." *Id.* at 435.  Thus, when a case
involves multiple claims sharing a common core of related facts,
"division of hours between claims can be an exercise in
futility." *Western Insulation, LP v. Moore*, 362 Fed. Appx. 375,
381 (4th Cir. 2010) (internal citation omitted).  Moreover, the
Supreme Court has explained that "litigants in good faith may
raise alternative legal grounds for a desired outcome, and the
court's rejection of or failure to reach certain grounds is not
a sufficient reason for reducing a fee." *Hensley*, 461 U.S. at
435.  The test in *Tazewell Oil* is in accord with this analysis.

     In this case, the three claims were all based on the
same core of facts surrounding Defendant's actions and
statements via email and Internet postings regarding Mr.
Ebersole, his business, and his conduct towards animals.
Although legally distinct causes of action, each was an attempt
to produce the desired outcome of addressing the resulting harm
from this common nucleus of facts.  In addition, the defamation
claim and the defamation-based business conspiracy claim were
based on related legal theories.  Given the related nature of
these three claims, Plaintiff argues persuasively that the

amount of work performed on the business conspiracy claim would have been substantially the same whether or not the other two claims had been brought.  The claims here were related and therefore, this Court will not reduce the award for unsuccessful, unrelated claims.

    5. Final Percentage Reduction Based on Degree of
       Success

        The "degree of success obtained by the plaintiff is the 'most critical factor' in determining the reasonableness of a fee award, [and] the district court 'may simply reduce the award to account for the limited success.'"  *Lilienthal*, 322 F. Supp. 2d at 675 (*quoting Hensley*, 461 U.S. at 436).  "In accounting for a plaintiff's limited success, a court should assess 'the size of the proposed attorney's fee . . . award in comparison with the total damage award.'"  *McDonnell v. Miller Oil Co., Inc.*, 134 F.3d 638, 641 (4th Cir. 1998) (*quoting Thomas v. Peacock*, 39 F.3d 493, 506 (4th Cir. 1994), *rev'd on other grounds*, 516 U.S. 349 (1996)).  "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."  *Hensley*, 461 U.S. at 440 (emphasis added).  These "level of success" and "the results obtained" factors are especially important in assessing the reasonableness of the attorneys' fee award if, as in this case, the prevailing party succeeded in pursuing some,

but not all of his claims for relief. *Id.* at 434.  Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount," even in cases "where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436.

Plaintiff prevailed on his business conspiracy claim and defamation claim, but not his tortious interference with contract claim.  Although Plaintiff ultimately was awarded $30,000 in compensatory damages and $60,000 in punitive damages (remitted to $15,000), this was substantially less than the $1,000,000 in compensatory damages and $350,000 in punitive damages originally sought.  Moreover, attorney's fees sought here ($84,258.59, adjusted down from the originally requested $131,598.25) are almost twice the amount of the total damages award ($45,000) received by Plaintiff.  Balancing these considerations, the Court will apply a 10% reduction from the final lodestar amount applying "a rough sense of equity to its knowledge of the litigation at issue" to account for Plaintiff's partial success. *Quantum Systems Integrators, Inc. v. Sprint Nextel Corp.,* 2009 WL 3423848 at *8 (E.D. Va. 2009) (*quoting Lilienthal*, 322 F. Supp. 2d at 675).  Reflecting this deduction

of $8,425.86, which is ten percent of $84,258.59, the Court will award $75,832.73 in attorney's fees.

### B. Bill of Costs and Additional Costs

Plaintiff filed a Bill of Costs seeking to recover costs authorized under 28 U.S.C. §§ 1821 and 1920, Federal Rule of Civil Procedure 54, and corresponding Local Rule 54. [Dkt. 87.]  These costs, totaling $3953.69, cover filing fees, fees for transcripts, and fees for copies of exhibits, as well as partially cover witness travel and hotel costs.  Defendant does not oppose this Bill of Costs.

In addition, Plaintiff requests additional costs in his Petition for further witness costs and for travel and lodging costs for Plaintiff and his counsel in the amount of $2,531.16, citing Va. Code § 18.2-500(a) and Va. Code § 17.1-626.  (Pl. Pet. [Dkt. 88] at 3; Pl. List of Additional Costs [Dkt. 88-1]; Pl. Mem. [Dkt. 89] at 13.)  Plaintiff notes that under Va. Code § 18.2-500(a), a plaintiff prevailing on a business conspiracy claim may recover "the costs of suit." Plaintiff argues that the costs recoverable under this statutory provision are not limited to those taxable in federal court.  In interpreting the meaning of the statutory phrase, Plaintiff notes that the costs generally taxable in Virginia state court include "every further sum which the court may deem reasonable

and direct to be taxed . . . for any other matter." Va. Code §
17.1-626.  (Pl. Mem. [Dkt. 89] at 13.)

In response to Plaintiff's request for additional
costs beyond those in the Bill of Costs, Defendant argues that
the Virginia Supreme Court has held that the costs that a court
may award under Va. Code. § 18.2-500 are limited to "costs
essential for prosecution of the suit, such as filing fees or
charges for service of process." *Advanced Marine Enterprises,
Inc. v. PRC, Inc.*, 501 S.E. 2d 148, 160 (Va. 1998).  (Def. Opp.
[Dkt. 100] at 1-2.)  Plaintiff responds that the travel and
lodging costs requested were essential to the prosecution of the
suit because such costs were necessary for the out-of-state and
out-of-area Plaintiff, witnesses, and counsel to attend the
various hearings, depositions, and trial.  (Pl. Reply [Dkt. 101]
at 1-2.)  In addition, Plaintiff notes that the categories of
costs to which the Virginia Supreme Court objected included
"expert witness fees, and expenses for express mail service,
messengers, meals, law clerk 'temporaries,' computer-based legal
research, 'library research,' photocopies, parking, taxicabs,
telephone calls, and transcripts."  (*Id.* at 1-2 (*quoting
Advanced Marine*, 501 S.E. 2d 148.)  Plaintiff argues that the
additional costs sought do not fall into such categories.  (*Id.*)

The Court finds that additional costs sought by
Plaintiff are not recoverable under Va. Code. § 18.2-500.

Courts applying the holding in *Advanced Marine* have refused recovery of costs like third party witnesses' travel costs, *Bhagat v. Diamond Information Sys., LLC*, 2012 WL 1241200 (Va. Cir. Ct. 2012), while allowing recovery of costs like court reporter fees and deposition transcript fees, *Martel v. Collins*, 47 Va. Cir. 538, at *2 (Va. Cir. Ct. 1999). The costs at issue here (travel and lodging costs) are more like the costs to which the Virginia Supreme Court expressly objected (general litigation costs, including travel related costs like meals, parking, and taxis) than the costs which it and subsequent courts have condoned (filing fees, charges for service of process, court reporter fees, and deposition transcript fees). As a result, the Court will not grant Plaintiff any additional costs or expenses beyond those requested in his Bill of Costs.

## IV.   Conclusion

        For these reasons, the Court will grant in part and deny in part Plaintiff's Petition for Attorneys' Fees and Costs, and will grant Plaintiff's request in his Bill of Costs. To summarize, the Court will award Plaintiff $75,832.73 in

attorneys' fees, $3,953.69 in Bill of Costs, and none of the
additional costs and expenses requested in his Petition, for a
total of $79,786.42.

     An appropriate Order will issue.


                                         /s/
September 26, 2012                 James C. Cacheris
Alexandria, Virginia      UNITED STATES DISTRICT COURT JUDGE