```
           IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division


RUSSELL L. EBERSOLE, d/b/a      )
ABERDEEN ACRES PET CARE         )
CENTER,                         )
                                )
     Plaintiff,                 )
                                )    1:12cv26 (JCC/TRJ)
          v.                    )
                                )
BRIDGET KLINE-PERRY,            )
                                )
     Defendant.                 )
```

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Bridget Kline-Perry's ("Defendant") Rule 60(b) Motion to Vacate the Judgment ("Motion"). [Dkt. 115.] For the following reasons, the Court will grant Defendant's Motion.

### I.   Background

This case involves allegedly libelous statements made by Defendant about Plaintiff Russell Ebersole ("Plaintiff") and his pet care business, Aberdeen Acres Pet Care Center. Defendant also allegedly engaged in a conspiracy to harm Plaintiff's business. Following local media reports of an investigation of Plaintiff arising from alleged acts of animal abuse at Aberdeen Acres, Defendant made a number of statements in which she accused Plaintiff of animal abuse and violating

1

laws pertaining to dog training.  These statements were published in various e-mails and Facebook postings.  For example, Defendant posted to her Norsire Farms Facebook page a letter composed by her and her friend, Charlie Oren, accusing Plaintiff of animal abuse and fraudulent acts, and asked others to share it.  Defendant also sent a letter to People for the Ethical Treatment of Animals ("PETA"), asking the organization to stage a protest regarding Plaintiff and Aberdeen Acres due to the alleged instances of animal abuse.

On December 13, 2011, Plaintiff, proceeding *pro se*, filed suit in Loudon County Circuit Court.  [Dkt. 1.]  On January 9, 2012, Defendant timely removed the action to this Court on the basis of diversity jurisdiction.  [*Id.*]  Plaintiff subsequently retained counsel [Dkt. 14] and filed an amended complaint on March 23, 2012 [Dkt. 31].  In the amended complaint, Plaintiff alleged libel, business conspiracy in violation of Va. Code § 18.2-499, and tortious interference with a business expectancy.

During discovery, Defendant served document requests on Plaintiff which included requests for "[c]omplete copies of all customer boarding and/or training files including, but not limited to, intake forms, pet medical instruction forms, pet medical waivers, contracts, agreements and other documents pertaining to the services provided."  *Ebersole v. Kline-Perry*,

2

No. 1:12cv26, 2012 WL 3776489, at *4 (E.D. Va. Aug. 29, 2012). Plaintiff did not produce any copies of videos to Defendant in response to this or any other discovery requests, although Plaintiff did make Defendant aware during discovery of the existence of a number of "positive" videos of dog trainings, videos which subsequently were introduced at trial during rebuttal. *Id.* Defendant also issued a subpoena to the Frederick County Sheriff's office during discovery, requesting copies of "[a]ny and all documentation pertaining to any investigation involving or related to reports of animal abuse by Russell L. Ebersole or Aberdeen Acres Pet Care Center, including photographs, video, electronic records or data in your possession or under your control." (Def. Mem. [Dkt. 116] at 2-3.)  At the time, the sheriff's office provided Defendant with a number of documents but no videos.[1]  (*Id.* at 3.)

On July 23, a jury trial commenced.  During the trial, Defendant produced testimony by herself and other witnesses that Plaintiff engaged in a number of instances of abuse of dogs entrusted to his training and care.  The following testimony is of particular note.  Defendant testified that she observed

---

[1] At the hearing on May 17, 2013, Defendant submitted an affidavit from Deputy Sheriff Megan Moreland from the Frederick County Sheriff's office.  In that affidavit, she stated that at the time of that subpoena, there were no responsive videos in her or the Sheriff's possession because a number of computers and other electronic devices which had been seized from Plaintiff had been forwarded to the United States Secret Service for technical assistance.  (Moreland Aff. At 1-2.)

Plaintiff choke and yank a puppy off the ground using a choke collar, lifting the puppy off his feet, if the puppy did not follow his commands adequately. (Kline-Perry Testimony, Tr. at 337:21-25, 340:17-19.) Another witness, Matt Phillips, testified that he viewed Plaintiff pull and step on a dog's leash, causing the dog to "yip" in pain and the dog's hind legs to be pulled off of the ground. (Phillips Testimony, Tr. at 325:9-326:5.) Emily Cleveland testified that she saw Plaintiff choke a dog with a leash in a choke chain, pin the dog to the ground by placing his foot on the dog's leash, and also hold the dog up in the air by the leash attached to the choke chain. (Cleveland Testimony, Tr. at 297:17-25, 298:1-4.) Finally, Megan Redmer testified that she observed Plaintiff swing a dog around off of the ground by a choke chain like a helicopter. (Redmer Testimony, Tr. at 418:24-25, 435:17-19.) None of these witnesses testified that the dogs at issue were engaged in violent or vicious behavior at the time of the alleged abusive treatment by Plaintiff, or that any other behavior reasonably justifying Plaintiff's actions toward the dogs. Later in the trial, during cross-examination of Plaintiff, Plaintiff testified that he had "no idea what [Phillips] observed" and "no idea what dogs he was talking about," that Defendant, Cleveland, and Redmer were wrong in the way that they described Plaintiff's conduct towards dogs, and that all the witnesses who had

4

...

testified against him had mischaracterized his conduct due to their own agendas and jealousy.  (Ebersole Testimony, Tr. 471-20-25, 472-476:17.)

After the close of Plaintiff's evidence, Defendant moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 with respect to the business conspiracy and tortious interference claims as well as a portion of the libel claim.  The Court granted Defendant's Rule 50 motion as to the tortious interference claim.  The Court also granted the motion as to certain of Defendant's allegedly libelous statements.  The business conspiracy claim and the libel claim (as to the remaining allegedly libelous statements) were ultimately submitted to the jury.

On July 25, 2012, the jury returned a verdict in favor of Plaintiff.  The jury awarded Plaintiff $7,500 in compensatory damages on his libel claim, $7,500 in compensatory damages on his business conspiracy claim, and $60,000 in punitive damages.  On July 27, 2012, the $7,500 in compensatory damages awarded to Plaintiff on his business conspiracy claim was increased to $22,500 pursuant to his entitlement to treble damages under Va. Code §§ 18.2-499 and 18.2-500.

On August 6, 2012, Defendant filed a Motion for New Trial or, in the Alternative, to Alter the Judgment, which this Court conditionally denied dependent on Plaintiff's acceptance

5

of a remitted award of punitive damages of $15,000.  [Dkt. 105.] On September 5, 2012, Plaintiff accepted the remitted punitive damages award.  [Dkt. 108.]  On September 26, 2012, this Court awarded Plaintiff $79,786.42 in attorneys' fees and costs. [Dkts. 111-112.]

On January 28, 2013, Defendant's counsel received a number of videos and other materials which had been produced by the Frederick County Sheriff's office in response to a subpoena issued in a civil lawsuit filed by Plaintiff against another individual in the United States District Court for the Western District of Virginia, *Ebersole v. Oren*, No. 5:2012-cv-105. (Def. Mem. at 3.)  Three of these videos are dog training videos showing Plaintiff engaging in behavior which, based on the Court's review of the videos, fairly could be characterized as abusive.  In the first video, Video A, Plaintiff can be seen training a small puppy on a leash.  Near the end of the video, Plaintiff makes a gesture towards the camera indicating that the camera should be turned off and then, without provocation, yanks the puppy off of its feet using the collar and leash and swings the puppy back and forth by its neck with all of its feet off the ground.  (*See* Video A; Def. Mem. at 4.)  In the second video, Video B, Plaintiff is training a large Doberman-type dog on a collar and leash.  As in Video A, near the end of the video Plaintiff gestures for the camera to be turned off and then,

6

again without provocation, jerks the dog off of its feet using the collar and leash. (*See* Video B; Def. Mem. at 4.)  Finally, in the third and longest video, Video C, Plaintiff is training a medium-sized black and white dog on a collar and leash. Multiple times during the video, Plaintiff yanks on the leash using his hands or foot with sufficient force to cause the dog to yelp in pain.  Near the end of the video, Plaintiff commands the dog to remain lying down and when the dog stands up, Plaintiff walks toward the dog and proceeds to kick it in the throat or chest area, causing it to yelp loudly and retreat from Plaintiff.  (*See* Video C; Def. Mem. at 5.)

On April 12, 2013, Defendant filed a Rule 60(b) Motion to Vacate the Judgment and accompanying memorandum in support. [Dkts. 115-116.]  Plaintiff filed his opposition on April 22, 2013 [Dkt. 117], and Defendant replied on May 2, 2013 [Dkt. 119].

Defendant's Motion is now before the Court.

## II.  Standard of Review

The relief provided by Rule 60(b) is an "extraordinary" remedy.  *Compton v. Alton S.S. Co., Inc.*, 608 F.2d 96, 102 (4th Cir. 1979).  A Rule 60(b) motion is committed to the sound discretion of the district court.  *August Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 810 (4th Cir. 1988) (quoting *Park Corp. v. Lexington Ins.*

7

*Co.*, 812 F.2d 894, 896 (4th Cir. 1984)). To succeed on a Rule 60(b) motion, "the party moving for relief must clearly establish the grounds therefore to the satisfaction of the district court . . . and such grounds must be clearly substantiated by adequate proof." *In re Burnley*, 988 F.2d 1, 3 (4th Cir.1992) (internal citations and quotations omitted).

### III.  Analysis

Defendant brings her Motion under Rule 60(b)(2) and (3). Rule 60(b) provides six grounds for relief from a final judgment. Fed. R. Civ. P. 60(b). Rule 60(b)(2) allows a court to provide relief from a final judgment due to "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). Rule 60(b)(3) allows a court to provide relief due to "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Motions under both subsections must be made within a year after the entry of judgment or order or the date of proceeding, a requirement which has been met here. Fed. R. Civ. P. 60(c)(1). Because the Court concludes that Defendant satisfies the requirements for relief under Rule 60(b)(3), as discussed below, the Court will analyze only the requirements for that subsection and not the requirements for Rule 60(b)(2).

In the Fourth Circuit, a moving party must establish three factors to prevail on a Rule 60(b)(3) motion: "(1) the moving party must have a meritorious defense; (2) the moving party must prove misconduct by clear and convincing evidence; and (3) the misconduct prevented the moving party from fully presenting its case." *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994) (citing *Square Constr. Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981)).  After assessing these factors, "the court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine within its discretion, whether relief is appropriate in each case."  *Id.* (quoting *Square*, 657 F.2d at 71).

First, the Court concludes that Defendant has shown a meritorious defense to the defamation claim and the interrelated business conspiracy claim.  The meritorious defense requirement ensures that granting relief from the judgment under Rule 60(b) would not "in the end [be] a futile gesture." *Boyd v. Bulala*, 905 F.2d 764, 769 (4th Cir. 1990).  In determining whether a moving party has a meritorious defense, "the trial court must have before it more than mere allegations that a defense exists." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970); *see also Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., Inc.*, 953 F.2d 17,

9

21 (1st Cir. 1992)("Even an allegation that a meritorious claim exists, if the allegation is purely conclusory, will not suffice to satisfy the precondition to Rule 60(b) relief."). To establish the existence of a meritorious defense, a party must present or proffer "evidence, which, if believed, would permit either the Court or the jury to find for the [moving] party." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). The movant, however, "is not required to establish a meritorious defense by a preponderance of the evidence[,] . . . the mere assertion of facts constituting a meritorious defense in an original complaint" may be sufficient. *Cent. Operating Co. v. Util. Workers of Am.*, 491 F.2d 245, 252 n. 8 (4th Cir. 1974) (citing *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)) (same).

Here, Defendant's primary defense to the defamation claim was that her statements were substantially true. (*See* Def. Mem. at 7-8.) Under Virginia law, truth "acts an absolute defense to any defamation" because in order for a statement to be actionable as defamatory, the plaintiff must prove by a preponderance of the evidence that the statement is false. *Goddard v. Protective Life Corp.*, 82 F. Supp. 2d 545, 560 (E.D. Va. 2000). A statement "is not false if its content or imputation is substantially true," meaning that the "statement is a fair and accurate description of the event in question."

10

*PBM Prods., LLC v. Mead Johnson Nutrition Co.*, 678 F. Supp. 2d 390, 400 (E.D. Va. 2009) (internal quotations omitted). In addition, as the alleged defamatory statements are the asserted means by which Defendant injured Plaintiff's business and business reputation, substantial truth forms the basis of Defendant's defense to this related claim as well. (*See* Def. Mem. at 1; Tr. 14:1-9.) In Virginia, to recover damages for statutory business conspiracy, a plaintiff must show that the defendant and others had "combined to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Shirvinski v. U.S. Coast Guard*, 1:09-CV-896 AJT TRJ, 2010 WL 4279254, at *4 (E.D. Va. Oct. 25, 2010) *aff'd*, 673 F.3d 308 (4th Cir. 2012) (quoting *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1284 (4th Cir. 1987)). Accordingly, Defendant may defend against this claim by showing that she did not engage in the alleged unlawful conduct, defamation, by which she supposedly injured Plaintiff's business or business reputation. When previously tried, this case was close. At trial, as well as through the new evidence provided with the current motion, Defendant presented evidence to support the above defenses which could allow a fact-finder reasonably to find for Defendant. As a result, the Court finds that Defendant

11

has shown that she has a meritorious defense for purposes of Rule 60(b)(3).

Second, the Court finds that Defendant has proven misconduct, fraud, or misrepresentation by clear and convincing evidence in light of the three newly obtained videos and their content. To begin, an adverse party's failure, either inadvertent or intentional, to disclose or produce pertinent requested discovery material constitutes misconduct under Rule 60(b)(3). *See Schultz*, 24 F.3d at 630; *Square*, 657 F.2d at 71; *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923-27 (1st Cir. 1988); *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983). In addition, a party's subornation of, or engagement in, perjury during trial constitutes fraud, misrepresentation, or misconduct within the purview of Rule 60(b)(3), provided the moving party can meet the other requirements for such relief under that section, including timeliness. *See Great Coastal Exp., Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 675 F.2d 1349, 1353, 1355 (4th Cir. 1982)

In this case, Plaintiff failed to produce or, at the very least, disclose the existence of highly pertinent evidence responsive to Defendant's discovery requests: dog training videos created by Plaintiff showing him engaging in treatment of dogs which could be characterized reasonably as abusive and which was consistent with and/or strongly relevant to

Defendant's allegedly defamatory statements. Although Plaintiff's failure to produce these videos during discovery is complicated somewhat by assertions that he was not in physical possession of his laptop computer, where he stored the backup files for his dog training videos, due to its seizure by local government during a separate ongoing animal abuse investigation, the Court concludes that Defendant has shown misconduct here nonetheless. Rule 34 provides that a party may request the production of items which are in the responding party's possession, custody, or control. Fed. R. Civ. P. 34(a)(1). Courts in this circuit have defined control for purpose of Rule 34 as "actual possession of a document or 'the legal right to obtain the document on demand.'" *Hatfill v. N.Y. Times Co.*, 242 F.R.D. 353, 355 (E.D. Va. 2006) (quoting *Terry v. Modern Investment Co. Ltd.*, 2006 WL 2434264, at *6 (W.D. Va. Aug. 21, 2006). While Plaintiff may not have had physical possession of the videos during discovery, he was the creator and legal owner of the videos and the laptop on which they were stored. He therefore had "control" over the videos. Given the content of the videos, they clearly were responsive to Defendant's document request for "[c]omplete copies of all customer boarding and/or training files including, but not limited to, intake forms, pet medical instruction forms, pet medical waivers, contracts, agreements and other documents pertaining to the services

13

provided." Accordingly, Plaintiff's failure to produce, or at least disclose these negative videos' existence and any difficulties in accessing them at the time, constitutes clear and convincing evidence of misconduct.

In addition, the content of the videos indicates that Plaintiff also arguably engaged in misconduct or misrepresentation by his testimony at trial. As described above, Plaintiff testified that Defendant and other defense witnesses were wrong and mischaracterized his treatment of dogs by their testimony that Plaintiff had choked and jerked dogs by yanking and stepping on their leashes, yanked dogs off their feet in punishment, lifted and swung dogs off the ground, and kicked dogs. The treatment of the dogs recorded in the videos, however, demonstrates that Plaintiff did engage in such behavior and that he therefore offered false testimony at trial. As a result of the clear and convincing evidence of Plaintiff's discovery misconduct and trial misrepresentations, Defendant has met the second requirement for Rule 60(b)(3) relief.

Third, the Court concludes that Plaintiff's misconduct prevented Defendant from fully presenting her case at trial. The videos go directly towards establishing the truth of Defendant's statements about Plaintiff's alleged abuse of dogs, and thus would have helped Defendant bolster her defense. *Schultz*, 24 F.3d at 630. Plaintiff's failure to disclose or

14

produce these videos also "denied [Defendant] access to evidence that could well have been probative on an important issue, [and] closed off a potentially fruitful avenue of direct or cross examination." *Anderson*, 862 F.2d at 924. The same is true of Plaintiff's statements at trial in which he denied the defense witnesses' specific testimony and implied generally that he never had engaged in abusive treatment of dogs entrusted to his care. In addition, knowledge of the contents of these videos "may well have led the defense attorneys to additional evidence" that was favorable and supported the substantial truth of Defendant's allegedly defamatory statements. *Schultz*, 24 F. 3d at 630. The Court notes that the Fourth Circuit has made clear that the new evidence which was withheld by misconduct "does not have to be result altering to warrant a new trial on a Rule 60(b)(3) motion" as this subsection "focuses not on erroneous judgments as such, but on judgments which were unfairly procured." *Id.* at 631.

Finally, given the highly relevant content of the videos at issue here, the Court finds that the consideration of finality of judgments is outweighed by the Court's interest in "justice being done in view of all the facts." *Id.* at 630. As in *Schultz*, "the fairness and integrity of the fact finding process is of great concern and a party's failure to produce a requested document so favorable to an adversary impedes that

15

process and requires redress in the form of a new trial." *Id.* at 631.

In light of this concern for justice, combined with Defendant's meritorious defense of substantial truth, the clear and convincing evidence of Plaintiff's discovery misconduct through the concealment of highly relevant negative videos and of Plaintiff's trial misrepresentation given the videos' content, and this misconduct and misrepresentation's significant impact on Defendant's ability to fully present her case at trial, the Court finds that Defendant has met -- by clear and convincing evidence -- her burden to vacate the judgment and to receive a new trial.

### IV.  Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion and, accordingly, grant a new trial.

An appropriate Order will issue.

                                        ___/s/____

May 23, 2013                James C. Cacheris
Alexandria, Virginia    UNITED STATES DISTRICT COURT JUDGE